23-7202 United States versus Bader. Yes, please. Okay, folks are leaving and then we'll get started. You may proceed. May please record Good morning. My name is Daniel Alonso I represent the defendant, Stephen Booyer. And in this case, like the previous case, there's no issue as to flight risk or dangerousness to the community. We're simply here based on the three substantial questions that we intend to raise to the merits panel. The first is a violation of the confrontation clause, the rules of authentication, in respect to an analysis of the cell phone of a non testifying witness. Because of that analysis, the witness who did not testify was, the government was able to put in information that it would not have been able to do otherwise. The second substantial issue that we have raised is that this case presents an issue of venue in the Southern District of New York for insider trading cases. It would be, if the government has its way, the first time that the Second Circuit would ever have affirmed venue based solely on the clearing of securities trades. And in this case, they were not able to present a sufficient case of venue, even as to that. So this case presents an excellent vehicle to revisit that. And the third substantial issue, your honors, is that the government elicited testimony that was wrong and inadmissible under any estimation, basically asking a lay witness whether the defendant had violated the insider trading rules. That was bad enough. But the problem there was that the charge was that he had purchased the securities. And the testimony elicited was that he violated insider trading rules by selling the securities. It was not an issue that he had material nonpublic information at the time that he sold the securities. So by asking that question, they changed the theory of the case mid case. So if I may start with the confrontation clause piece. This actually, we believe, is by definition a substantial question because the Supreme Court has pending yet another substitute analyst case called Smith v. Arizona, granted cert. And in that case, it's going to consider one of the questions that Justice Sotomayor flagged in her bull coming concurrence, the question about expert witnesses being able to testify as to unadmitted underlying reports of other analysts who did not testify. In this case, I want to be very clear, this was not an expert witness. Literally the witness, Ms. Volchko, who came to testify about the report, the analysis of the telephone of this man who did not testify, Mr. Stansbury. Ms. Volchko was handed a report by the case agent, not even by another analyst. She didn't even go to the FBI's computer unit to pull it out of the computer. She was handed it by the case agent. She read part of it. She came up onto the witness stand. And she testified about two key pieces of evidence that the government then exploited on summation. By doing that, we had essentially no information whatsoever about how that report came to be produced. There was no, the government in arguing that the report should be, that the testimony should not be stricken, the government said, this is a celebrate report, we're going to show her a celebrate report, which was prepared. Passive voice. There is no evidence whatsoever of who prepared it, sorry, who prepared it is listed on the report, but how it was prepared, whether the software was properly calibrated, whether it was actually the telephone that it purported to be. There are all sorts of statements on that celebrate report that have not been authenticated in the least because the analyst who prepared the report did not testify. So that's your authentication argument, right? Not the confrontation clause argument. Well, they're very much juxtaposed, but yes, that is the authentication argument. And by the way, the authentication argument is, we believe, very substantial. Imagine a DWI case. You started with confrontation and then you left it without making a point on it. Well, on confrontation, the report itself, which Volchko, the witness, testified, is an analysis that they do. The report itself is testimonial because its primary purpose is for law enforcement. And therefore, it was admitted without the ability to cross-examine the examiner who created the report. So yes. Go ahead. How significant is that evidence in the light of all the other evidence? It's crucial, Your Honor, because this was an incredibly weak case of insider trading. Their theory was that there was material non-public information passed from a person who did not testify at trial to our client. And the only evidence that, actually, there was literally no evidence that that person who passed the information had passed the information. There was not even any evidence that that person who did not testify knew the information. So the two pieces of information that came out of this report, this celebratory report, one is that he searched the website at the relevant time relating to the information, which is the name of the company that was the target of the takeover. And the other is that the day after the conversations he had with our client, that he restored his telephone, which erased the previous contents and restored it. So those two pieces of information, which the government exploited, were a lynchpin. And really the only evidence that this man, Stansberry, even knew that Guidehouse was going to acquire Navigant. He may not have known, we argued, but there is at least the evidence that he searched the Navigant website during the operative time. So it was very, very important. But getting back to the confrontation issue, we believe that the mere fact that the Supreme Court has wrestled with this issue now for several years and is once again grappling with it in the Smith case by itself creates a substantial issue. This court has never, on the confrontation issue, this court has never held, nor has the Supreme Court, that a purely machine-generated report cannot be testimonial. So I think this would be an excellent vehicle. But even if the court believes it's not testimonial, there were substantial testimonial implicit statements. The analyst who ran the report was presumably, was implicitly saying the machine was properly calibrated, I ran the report, the time stamps were correct, it was on the phone that belonged to Chris Stansberry. None of that stuff was connected up at all. There was evidence that years earlier somebody had taken a phone from Stansberry. And there was evidence that the case agent handed paper, or electronic paper, to the analyst. And then the analyst said, oh, this belongs to the guy from several years ago because it's got a number that matches. That's not how these things are done. They're not done that way in DWI, not done that way in DNA, it's not done that way in drug cases. Why would we make an exception here? And even if we wouldn't, it's a great substantial vehicle for the court to consider. Could you talk about the overlay of the plain error standard? This is a plain error question, there's no objection. There is absolutely no objection. I'm sorry, so it's not plain error. It's not plain error. And if I may, I don't understand the plain error argument the government made, given that Judge Berman ordered briefing on the issue. We submitted a letter which in its very first paragraph says that this is a violation of the Confrontation Clause, and it also says it was not properly authenticated. And at the very end, yes, of course. Can I have the record cite for the brief, the record cite for the letter briefing? Do I have it? I will get it for you in a moment, Your Honor, if I may. But it's on page one of the underlying brief that we submitted on March 6th of this year. So I can get you the appendix on it. And later on in that brief, we cited Bull Cummings specifically for the very principle that we're citing it for today. So if I may, on the venue point, it's there was some cases over the last 20 years have offhandedly said that if trading happens on the New York Stock Exchange, venue is proper in the Southern District of New York. That's true if trading happens on the floor of the Southern District of New York. So it's A92. I'm sorry, it's docket number 92 at pages one and two, Your Honor, was the letter. That's a district court docket. That's a district court docket, yeah. So on venue, those cases were all back when trading was done on the floor of the New York Stock Exchange. Trading in the Stock Exchange is now done on servers in New Jersey. So the government didn't even attempt to bring in a witness from the New York Stock Exchange. Instead, they brought in somebody from the Depository Trust and Clearing Corporation. And that person very clearly testified that trades are cleared at one of two mainframe computers. One's in Manhattan. One's in Brooklyn. They sometimes come into Manhattan. They sometimes come into Brooklyn. And they have no way to know which one. So the trade's an issue here. 50-50, certainly not a preponderance of the evidence, could have happened in Brooklyn, could have happened in Manhattan. They have said that this was one logical mainframe, meaning that there are two physical, if I may finish, two physical mainframes. Clearly, the evidence was that. But they say that there's one logical mainframe, which all that means is it uses the same code, and it stores the information in both places for sure. But storing information doesn't make for insider trading venue any more than shipping off the records to Maine would allow venue in Maine. Here, the government cannot have sufficient evidence by preponderance that it was actually done in Manhattan, even if clearing, which the court has never squarely held, clearing by itself would be enough for a venue. There are many dicta statements about clearing. There are cases where there was clearing and execution. But there's never been a case with just clearing. And in this case, they haven't even proven that. Thank you, Your Honor. Thank you. Ms. Graham. May it please the court, I represented the government below, and I represent the government on appeal. The defendant's motion for bail pending appeal should be denied because he has not raised a substantial question of law or fact, likely to result in a reversal of his conviction or a new trial. Going to the confrontation clause and authentication issue first. Judge Nathan, as you noted, this is not really a confrontation clause argument. It is really an authentication argument. It's not a confrontation clause argument because there were no testimonial statements of an absent witness introduced here. Analyst Volchko testified about her examination of a Cellebrite report, how Cellebrite worked generally, and her conclusion that the Cellebrite report showed the contents of the phone referenced in government exhibit 658, which was the guide house vendor form that was already in evidence. She did not testify about any statements or certifications by an absent witness, unlike what you have in Bull, Cumming, and Smith. And so this is not really a confrontation clause issue. It's really, as Judge Nathan noted, an authentication issue. And on that, the report was sufficiently authenticated. Here, of course, your honors are reviewing for abuse of discretion. And authentication only requires that a reasonable juror could find that the document is what it is claiming to be. And here, the report was sufficiently authenticated. The guide house lawyer explained how Stansbury's phone was imaged in 2019 and introduced the vendor form without objection. Analyst Volchko then testified that the Cellebrite contents were from the same phone, identified in the guide house vendor form by comparing identifiers that were the same, the IMEI, the unique number associated with each phone, as well as other identifiers, such as the phone number and the date of the extraction. And a stipulation provided that the Cellebrite contents were from a phone with the same phone number as Mr. Stansbury. So Judge Berman did not abuse his discretion in admitting it, and any authentication issues went to weight, not admissibility. Defense counsel was able to and, in fact, did cross-examine the government's witness. In terms of the review that's appropriate, there was also a question about that, Your Honor. I mean, if we're looking at this as the frame of a confrontation clause issue, that cross-examination isn't pertinent, is it? Because that's what Judge Berman rested his conclusion about the confrontation clause on. Oh, well, you could cross-examine the witness who looked at the report that was handed to them. That's not the right way to look at it. If there had been testimonial statements of an absent witness introduced, of course not. Cross-examination of the witness present doesn't cure a confrontation clause issue, but there were no testimonial statements of an absent witness that were introduced. And so, and to Your Honor's point about how we review it, it is plain error review of the confrontation clause issue, and that's because there was no contemporaneous objection. What does District Court Docket 92 tell me about that point? That was that evening. So during the actual trial day before the witness testified, and this is at transcript 883 to 885, the objection was that the witness was an expert, not a lay witness, and that they had not had sufficient notice, an issue that they're not raising here, and the authentication objection. Judge Berman ruled on that. He ruled that the witness's testimony could come in after hearing a brief voir dire, and then the witness testified and left the stand. Her testimony was concluded. Judge Berman asked for further briefing on the issues raised, which again were the expert issue and the authentication issue, and defense counsel briefed it that evening. And only that evening, after the witness had already testified, did defense counsel add the confrontation clause argument. That was not made contemporaneously. That was not made during the witness's testimony. And so as to that, it's reviewed for plain error. As to the authentication issue, it's raised for harmless error and is harmless for the reasons that I noted. Judge Calabresi, you had a question. And Ms. Graham, how do you see the overlay between plain error and the bail standard? How do we think about that? Yes, so certainly it was not plain error. The bail standard, of course, then says- Do you set that aside in the plain error question? Is this a substantial question, the confrontation clause question in plain error? Does it come plain errors for the merits of the appeal? Yes, Your Honor. Even if that were the analysis, this would not be a substantial question of law or fact because there is no confrontation clause issue. Defense counsel has not pointed to a statement of a missing witness that was admitted. It's not like Smith. It's not like Bullcoming. The witness on the stand, Annalise Fulchko, did not introduce statements of others or statements about what Annalise Duda had done or had not done or the veracity of it. She simply looked at the Celebrate report and testified about her own experience and observation. So I'm just trying to remember Mr. Alonzo's examples, but is there implicit testimony that time stamps are accurate? There was not implicit testimony. There was testimony about the Celebrate report, but not anything that Annalise Duda had said or certified to, which would be the confrontation clause issue. So there was no implicit testimony about that. It was really, there were no statements by an absent witness. And then, Judge Calabresi, you asked, and my next point is, how significant was this evidence in light of all the other evidence? And the answer is that it was not significant in light of all the other evidence. First of all, there were two separate insider trading schemes that were charged separately in different counts. This evidence went only to one of those schemes, to insider trading in the stock of Navigant. It had nothing to do with trading in the stock of Sprint, which was an entirely different scheme that happened in a different year with different sources of the evidence and with different trades. And the evidence of that was very strong. As to the Navigant accounts, it was not central or critical evidence. And this court can conclude that its introduction did not affect the jury. The evidence introduced was a cookie showing that Mr. Stansbury, not the defendant, visited the Navigant website after the defendant had already started trading. The key evidence in this case, the cookie was from June 20th. The key evidence in this case was that on June 12th, an insider at GuideHouse told Mr. Stansbury information that let him know that GuideHouse was considering a merger with someone in the RCM space, that Mr. Stansbury then spoke with Mr. Booyer, who was extremely knowledgeable about the RCM space, conveyed that information is what we argued in that call, and that Mr. Booyer then goes home that night. Again, we are talking about, at this point, June 13th, seven days before the cookie at question. And on June 13th, Mr. Booyer searches Navigant on the Schwab website and begins trading. That was the key evidence, not the evidence that seven days later, Mr. Stansbury visited the Navigant website. And, in fact, there was other evidence that later in July, again, after Mr. Booyer had begun trading, other evidence that's not contested, that did not come from the phone, that Mr. Stansbury had searched for Navigant. So this was not critical evidence. And the evidence that Stansbury restored his cell phone from an iCloud backup on June 13th was ambiguous, as defense counsel effectively elicited on cross and made the point in their closing argument. They said there's lots of reasons that people restore, and there's no way to know what was deleted. And that was true. The government couldn't prove what he deleted or why he had restored the phone. The other evidence, on the other hand, and I see that my time is almost up, and so I'll just point you to the record showing that the other evidence was overwhelming. These were the largest trades Mr. Booyer had ever made, almost twice as large as any other trade. He bought a million dollars worth of Navigant stock. Sprint and Navigant were the only stock that he bought in the account of his former mistress. He lied to Guidehouse when he was interviewed about the reasons for the trade and afterwards sent a signal message, an encrypted message, to Mr. Stansbury, telling him the cover story and saying, I need to see you. Please, I will catch the next flight. Could you use a little bit of time to address venue? Yes. In terms of venue, the venue presented here. So Mr. Alonzo says it shows clearing in either Manhattan or Brooklyn, can't tell where. Is it right that that's the only evidence of venue? And how then could the jury conclude by preponderance Manhattan? That's not the only evidence of venue. There was significant other evidence of venue. Even to that evidence, I'll point out, the evidence was that all trades were stored on both the Brooklyn and the Manhattan computer. And so it is undisputed that the trades were stored. The 50-50 evidence he's talking about. So that means it's cleared and then it's cleared in one of the locations and then stored as data in both locations. That's right, Your Honor. It's cleared and settled in one of the locations, what Mr. Alonzo called the 50-50, and then it's recorded in both locations simultaneously at the exact same time. And that's a transcript 946 to 947. I would point out also that we are not talking about just two trades. So even on the clearance and the settlement and the 50-50, there were 41 Navigant buys and five Sprint buys. That's Government Exhibits 802 to 811 showing that. And so if each trade has a 50-50 chance, when you're talking about 41 trades and each of them has a 50-50 chance, the chance that any one of those trades. You're saying it's a coin flip as to whether it's Manhattan or not? Mr. Alonzo himself said that it, you know, argued that it was a 50-50 situation. Math is not my thing, but I'm not sure a 50% chance is the same as a coin flip. It could be that there's a factor that drives it in one or the other, but it still ends up being 50% in one and 50% in the other. Yes, but if you go down that 50-50 41 times statistically, it's 100% certainty that one of them will go to the Manhattan computer. With five trades, which was Sprint, there's a 96% probability that at least one trade will settle in Manhattan. That statistical evidence is in the record? It's not in the record, but your honors can take note of that. But backing up away from the math, your honor, because I'm not sure that that's my strongest argument based on the reaction, it's undisputed that all the trades were stored in Manhattan. Further, there was other evidence besides the DTCC witness that there were other things that happened in Manhattan, and so I'll briefly list those and then I see that I'm well over my time. One, that the stock exchange was located in the southern district of New York. Two, that the trades were executed by a broker that was located in Manhattan with a data center in Westchester that did the clearance and settlement of those trades. That's transcript 855 to 856. And last, that one of the selling brokers for certain Navigant trades was based in Manhattan. That's transcript 843 to 849. Defense counsel claims that the case law is that the trades must have taken place on the floor of the New York Stock Exchange. There's nothing in the case law that suggests that. It simply says that the stock exchange must have been located in SDNY to establish venue, and in fact, in Riley, a 2016 summary opinion, concerns 2008 trading that occurred on NASDAQ, which has no physical floor and has always been a purely electronic trading exchange. So that's not something that this circuit has held before. Your Honors, I'm well over my time. Thank you for hearing me. Thank you, Mr. Graham. Thank you to both counsel. The matter is submitted and we will reserve the decision.